UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES SANTICH and<br><br>OLD DUTCH MUSTARD CO., INC. d/b/a PILGRIM FOODS, INC.<br><br>Defendants. | No. 1:25-cr-02-LM-AJ-01/02<br><br>Knowing Discharge of a Pollutant Without a Permit (33 U.S.C. §§ 1311(a), 1319(c)) (Counts 1-4)<br><br>Notice of Forfeiture (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461) |

## INFORMATION

THE ATTORNEY FOR THE UNITED STATES, ACTING UNDER AUTHORITY CONFERRED BY 28 U.S.C. § 515, CHARGES:

### Background

At all times relevant to this Information:

1. Defendant CHARLES SANTICH was the owner and President of Defendant OLD DUTCH MUSTARD CO., INC. d/b/a PILGRIM FOODS, INC. ("OLD DUTCH"). SANTICH was responsible for environmental compliance at the OLD DUTCH facility. SANTICH resided in Manhasset, New York, and had a second home in Peterborough, New Hampshire.

2. OLD DUTCH was a New York corporation that manufactured mustard and vinegar at its facility in Greenville, New Hampshire (the "OLD DUTCH facility" or the "facility").

3. The Souhegan River begins at Water Loom Pond in New Ipswich, New Hampshire, runs northeast near and to the east of the OLD DUTCH facility, and flows into the

Merrimack River in East Merrimack, New Hampshire. The Souhegan River is one of nineteen New Hampshire rivers that the State of New Hampshire has designated as an important natural resource.

Statutory and Regulatory Framework

4. The Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq*., is the Nation's comprehensive water pollution control statute. The purpose of the CWA is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. 33 U.S.C. § 1251. In addition, the CWA was enacted to prevent, reduce, and eliminate water pollution in the United States and to conserve the waters of the United States for the protection and propagation of fish and aquatic life and wildlife, recreational purposes, and for the use of such waters for public drinking water, agricultural, and industrial purposes. 33 U.S.C. § 1252(a).

5. Title 33, United States Code, Section 1311 of the CWA prohibits the discharge of any pollutant by any person from a point source into a navigable water of the United States, except in compliance with provisions of the CWA, including 33 U.S.C. § 1342.

6. The CWA defines a "person" as an individual or a corporation, 33 U.S.C. § 1362(5); "discharge of a pollutant" as any addition of any pollutant to navigable waters from any point source, 33 U.S.C. § 1362(12); "pollutant" as including dredged spoil, solid waste, incinerator residue, garbage, biological materials, rock, sand, cellar dirt, and industrial, municipal, and agricultural waste discharged into water, 33 U.S.C. § 1362(6); "navigable waters" as waters of the United States, 33 U.S.C. § 1362(7); and "point source" as any discernible, confined, and discrete conveyance from which pollutants are or may be discharged, including any pipe, ditch, channel, conduit, and discrete fissure, 33 U.S.C. § 1362(14).

7. The Souhegan River is a navigable water of the United States as defined by the CWA.

8. Title 33, United States Code, Section 1342 of the CWA authorizes the discharge of pollutants only in compliance with a permit issued under the National Pollution Discharge Elimination System ("NPDES") by the U.S. Environmental Protection Agency ("EPA") or by a state with an approved permit program. 33 U.S.C. §§ 1311(a), 1342.

9. Title 33, United States Code, Section 1319(c)(2)(A), makes it a crime for any person to knowingly discharge a pollutant from a point source to a water of the United States without an NPDES permit.

<u>Old Dutch Was Prohibited from Discharging Pollutants into the Souhegan River.</u>

10. The manufacturing processes at the OLD DUTCH facility generated, among other things, acidic (low pH) wastewater, which was a pollutant as defined by the CWA.

11. OLD DUTCH did not have an NPDES permit or any other permit allowing it to discharge any of its wastewater into nearby waters, including the Souhegan River.

12. To dispose of its wastewater, OLD DUTCH was supposed to store the wastewater at its facility in tanks and pay a trucking company to haul the wastewater to a treatment plant. In general, the trucking company removed wastewater from the OLD DUTCH facility in tanker trucks every business day, and OLD DUTCH paid the transportation company on a per load basis.

13. OLD DUTCH was subject to a stormwater permit that authorized it to discharge only uncontaminated, pH neutral stormwater from three stormwater outfalls that flow into an

"Unnamed Brook" located at the south side of the facility. After it passed the OLD DUTCH facility, the Unnamed Brook flowed into the Souhegan River.

14. Some of the ground at the OLD DUTCH facility contains residue from many years of past spills and leaks of vinegar and other materials, especially the tank farm storage area.. Stormwater and any other water that became acidic (low pH) by flowing through these areas and for other reasons was a pollutant as defined by the CWA.

15. The stormwater and any other water at the OLD DUTCH facility that became acidic could not be lawfully discharged through the three stormwater outfalls or otherwise into nearby waters. Instead, it was to be stored and hauled off site with the facility's wastewater.

16. Beginning in or around 2014, the EPA required OLD DUTCH to continuously monitor the pH at an upstream Unnamed Brook location, a downstream Unnamed Brook location, and a catch basin at the facility.

17. In or around April or May 2015, SANTICH hired an excavation company to install and bury a pipe from the OLD DUTCH facility to transport water to tanks located partway up a hill behind the facility.

18. In or around 2016, OLD DUTCH entered into a consent decree with the state of New Hampshire to address stormwater discharges and the release of hazardous waste (a spent phosphoric acid cleaning solution) to the Unnamed Brook that required OLD DUTCH to maintain a continuous water quality monitoring program in the Unnamed Brook.

<u>Old Dutch Discharged Pollutants into the Souhegan River.</u>

19. Between in or around August 2016 and September 2017, SANTICH ordered an employee to dismantle the water storage tanks behind the facility and, in or around May 2017,

SANTICH hired the same excavation company that had installed the underground pipe to extend the pipe to an old, abandoned railroad bed at the top of the hill behind the facility. The pipe pointed generally in the direction of the Souhegan River.

20. Beginning in or around May 2017, SANTICH directed OLD DUTCH employees to repeatedly pump wastewater and acidic stormwater through the underground pipe to the abandoned railroad bed. At SANTICH's direction, the employees used a three-way valve located in the OLD DUTCH facility to direct the wastewater and acidic stormwater through the buried pipe.

21. Once the wastewater or acidic stormwater discharged at the top of the hill, it flowed along a manmade swale or ditch down the abandoned railroad bed toward the Souhegan River until it reached a natural swale and then a sharp drop-off, where it flowed through natural gullies to the river.

22. The pipe discharged just over the top of the hill and so the wastewater and acidic stormwater did not flow downhill into the monitored Unnamed Brook. The manmade ditch directed the water to discharge into the Souhegan River to the northeast of the facility. This discharge point was downstream of, and not detectible by, the continuous environmental monitoring required by the EPA and State of New Hampshire.

23. In or about March 2021, SANTICH ordered the installation of an underground sump at the corner of the tank farm area that collected acidic stormwater that had flowed through the tank farm area so that it could be pumped directly up the hill through the buried pipe.

24. In or around the Fall of 2022, SANTICH hired the same excavation company that installed the underground pipe to clean out the undergrowth from the manmade ditch at the top of the hill and line it with riprap to facilitate the flow of wastewater and acidic stormwater to the river.

25. SANTICH attempted to keep the use of the buried pipe to discharge wastewater and acidic stormwater hidden, including by covering the end of the pipe with dirt and brush and giving directions to employees not to tell anyone about it. Following Santich's directions, no one, including Santich, told even the company's environmental consultant about it.

26. SANTICH directed that wastewater and acidic stormwater be discharged up the underground pipe and into the Souhegan River in order to, among other things, reduce the loads of wastewater and acidic stormwater that were being transported off site by the trucking company, thereby reducing OLD DUTCH's costs by reducing its payments to the trucking company.

27. In or around May 2023, inspectors from New Hampshire Department of Environmental Services discovered wastewater from the facility with low pH and smelling of vinegar flowing from the manmade riprap-lined ditch at the top of the hill behind the OLD DUTCH facility into the Souhegan River. SANTICH attempted to explain the waste discharges at the top of the hill with the false representation that it was a failed attempt to plant mustard seed there.

28. In or around August 2023, federal investigators discovered the buried pipe and observed wastewater actively flowing from the pipe into the riprap-lined drainage ditch that flowed into a natural swale and discharged into the Souhegan River.

29. Investigators sampled and tested the wastewater flowing from the pipe; it had an acidic pH of approximately 3.6.

COUNT ONE

[Knowing Discharge of a Pollutant Without a Permit
33 U.S.C. §§ 1311(a), 1319(c)(2)(A) and 18 U.S.C. § 2]

30. The Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515, re-alleges and incorporates paragraphs 1 through 29 of this Information.

31. Beginning at an unknown date but by at least in or around January 2020 and continuing to in or around August 2023, in the District of New Hampshire, the defendant,

CHARLES SANTICH,

knowingly caused to be discharged a pollutant, namely acidic wastewater and acidic stormwater, from a point source into a water of the United States, that is the Souhegan River, without a permit issued under Title 33, United States Code, Section 1342, and did aid, abet, counsel, command, and procure the same.

All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2), and Title 18, United States Code, Section 2.

COUNTS TWO THROUGH FOUR

[Knowing Discharge of a Pollutant Without a Permit
33 U.S.C. §§ 1311(a), 1319(c)(2)(A)]

32. The Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515, re-alleges and incorporates paragraphs 1 through 29 of this Information.

33. On or about the dates charted below, in the District of New Hampshire, the defendant,

OLD DUTCH MUSTARD CO., INC.
d/b/a PILGRIM FOODS, INC.,

knowingly discharged a pollutant, namely acidic wastewater and acidic stormwater, from a point source into a water of the United States, that is the Souhegan River, without a permit issued under Title 33, United States Code, Section 1342.

| **Count** | **Dates** |
|---|---|
| 2 | May 19, 2023 |
| 3 | May 23, 2023 |
| 4 | August 2, 2023 |

All in violation of Title 33, United States Code, Sections 1311(a) and 1319(c)(2).

NOTICE OF CRIMINAL FORFEITURE PURSUANT TO
18 U.S.C. § 981(A)(1)(c) and 28 U.S.C. § 2461

The Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515, re-alleges and incorporates the allegations of Counts One through Four of this Information for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461. Upon conviction of one or more of the offenses set forth in Counts One through Four of this Information, the defendants shall forfeit to the United Stales, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation. If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

All in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

Date: January 17, 2025

JOHN J. MCCORMACK
Attorney for the United States, Acting under
Authority Conferred by 28 U.S.C. § 515

By:________________________________

Matthew T. Hunter
Assistant United States Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
Matthew.Hunter@usdoj.gov