**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:25-cr-02-LM-AJ-01/02** |
| | ) | |
| **CHARLES SANTICH** | ) | |
| | ) | |

# PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorneys, John J. McCormack, Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515, and Todd Kim, Assistant Attorney General for the Environment and Natural Resources Division, United States Department of Justice, and the defendant, Charles Santich, and the defendant's attorneys, S. Amy Spencer, Esquire, and Mathew J. Todaro, Esquire, enter into the following Plea Agreement:

1. The Plea and the Offense.

The defendant agrees to waive his right to have this matter presented to a grand jury and plead guilty to an Information charging him with Knowing Discharge of Pollutant Without a Permit, in violation of 33 U.S.C. §§ 1311(a), 1319(c)(2)(A) and 18 U.S.C. § 2.

In exchange for the defendant's guilty plea, the United States Attorney's Office for the District of New Hampshire and the Environmental Crimes Section, United States Department of Justice (collectively, the "United States"), agree to the sentencing stipulations identified in Section 6 of this agreement.

2. The Statute and Elements of the Offense.

Title 33, United States Code, Section 1311, prohibits the "discharge of any pollutant"

without a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES"), which in New Hampshire is administered by the United States Environmental Protection Agency ("EPA"). 33 U.S.C. § 1311(a); *United States v. Agosto-Vega*, 617 F.3d 541, 548-49 (1st Cir. 2010). The term "discharge of a pollutant" includes "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). The term "point source" includes "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, . . . conduit, . . . [or] discrete fissure . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

Title 33, United States Code, Section 1319 provides, in pertinent part:

> Any person who . . . knowingly violates section 1311 . . . of this title . . . shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both.

33 U.S.C. § 1319(c)(2)(A).

Title 18, United States Code, Section 2 provides, in pertinent part:

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2(b).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

> First, the defendant discharged a pollutant on or about the dates alleged in the information;
>
> Second, the pollutant was discharged from a point source;
>
> Third, the pollutant was discharged into a navigable water of the United States (the Souhegan River);

Fourth, the defendant did so without an NPDES permit; and

Fifth, the defendant did so knowingly.

*Eighth Circuit Model Jury Instructions, 2023 Edition,* Instruction 6.33.1311(A), https://juryinstructions.ca8.uscourts.gov/instructions/criminal/Criminal-Jury-Instructions.pdf; *United States v. Agosto-Vega*, 617 F.3d 541, 548–49 (1st Cir. 2010).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

The Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 (commonly referred to as the Clean Water Act or "CWA"), prohibits the discharge of any pollutant into navigable waters of the United States except in compliance with an NPDES permit issued pursuant to 33 U.S.C. § 1342. The Souhegan River is a navigable water of the United States.

Defendant Charles Santich is the president and owner of Old Dutch Mustard Co., Inc., d/b/a Pilgrim Foods, Inc. ("Old Dutch Mustard" or "Old Dutch"). Old Dutch is a New York corporation that was acquired by the Santich Family in 1941. Old Dutch manufactures mustard and vinegar at its facility in Greenville, New Hampshire (the "Old Dutch facility" or the "facility"). This manufacturing process generates, among other things, acidic, low pH, wastewater, which is a pollutant as defined by the CWA.[1] Old Dutch does not have an NPDES permit or any other permit allowing it to discharge any of its wastewater to nearby waters including the Souhegan River. To dispose of its wastewater, Old Dutch is supposed to store the

[1] The wastewater at issue in this case is from the manufacturing process at Old Dutch, not sanitary waste or sewage.

wastewater in tanks at its facility and pay a trucking company to haul the wastewater to the Rochester publicly owned treatment plant; the treatment plant is able to use the wastewater in its treatment process because of the acidic nature of the wastewater. In general, the trucking company removes wastewater from the Old Dutch facility in tanker trucks every business day, and Old Dutch pays the transportation company on a per load basis. By approximately 2013 or 2014, Santich took on leadership roles at Old Dutch, including president and general manager, and has ultimate responsibility for environmental compliance at the Old Dutch facility.

Old Dutch is subject to a stormwater permit (referred to as the Multisector General Permit for stormwater discharges associated with industrial activity) that authorizes it to discharge only uncontaminated, pH neutral stormwater from three stormwater outfalls that flow into an "Unnamed Brook" located at the south side of the facility. After it passes the Old Dutch facility, the Unnamed Brook flows into the Souhegan River. Some of the ground at the Old Dutch facility contains residue from many years of past spills and leaks of vinegar and other materials, especially the tank farm storage area. Stormwater or any other water that becomes acidic by flowing through these areas or for any other reason is wastewater and is not permitted to be discharged through the three stormwater outfalls or otherwise into nearby waters. Acidic, low pH stormwater is hauled off-site along with the facility's other wastewater. Acidic, low pH stormwater is a pollutant under the CWA.

Old Dutch has a history of CWA non-compliance with the stormwater permit dating back to the 1980s, resulting in several enforcement actions brought by the EPA, the United States Department of Justice, New Hampshire Department of Environmental Services ("NH DES"), and the New Hampshire Attorney General's office to attempt to bring the facility into

compliance.[2] As a result, EPA and NH DES have required very close monitoring of the discharges to the Unnamed Brook. For example, in 2004, the United States and Old Dutch entered a Consent Decree that required Old Dutch to pay a civil penalty, terminate all unpermitted discharges from its facility, develop an environmental management system, and provide reports of monitoring and inspections. In 2014, EPA issued an Administrative Order and Request for Information to Old Dutch pursuant to 33 U.S.C §§ 1318(a) and 1319(a)(3)(a) that required continuous monitoring of the pH (through the installation of water quality monitoring sondes that took pH measurements every 15 minutes) at three locations: an upstream Unnamed Brook location, a downstream Unnamed Brook location and at a mid-point catch basin at the facility. In 2016, Old Dutch entered into a consent decree with New Hampshire to address stormwater discharges and the release of hazardous waste (a spent phosphoric acid cleaning solution) to the Unnamed Brook that similarly required Old Dutch to maintain a continuous water quality monitoring program in the Unnamed Brook using the monitoring sondes consistent with the requirements in EPA's 2014 Order. The sondes were to be checked every two weeks by an independent environmental consultant with data submitted to EPA and NH DES.

In approximately April or May 2015, Santich hired an excavation company to install and bury a pipe from the Old Dutch facility to transport water to tanks located up hill and behind the facility. Between August 2016 and September 2017, Santich ordered an employee to dismantle the water storage tanks and, in approximately May 2017, he hired the same excavation company

[2] New Hampshire brought its actions under the New Hampshire Water Pollution and Waste Disposal Act, RSA chapter 485-A, which makes it unlawful to lower the water quality of a receiving water, and the Hazardous Waste Management Act, RSA chapter 147-A (a liquid with a pH lower than 2 is considered a corrosive hazardous waste).

to extend the underground pipe to an old, abandoned railroad bed at the top of the hill behind the facility; the pipe pointed generally in the direction of the Souhegan River. Beginning at about that time, Santich directed Old Dutch employees to repeatedly pump wastewater and acidic stormwater through the underground pipe to the abandoned railroad bed. At Santich's direction, the employees used a three-way valve located in the facility to direct the wastewater and acidic stormwater through the buried pipe. The three-way valve could direct wastewater and acidic stormwater that had flowed through the tank farm area either to the wastewater storage tanks or to the underground pipe to discharge the water at the top of the hill. Once the wastewater or acidic stormwater discharged at the top of the hill, it flowed along the manmade swale or ditch down the abandoned railroad bed toward the Souhegan River until it reached a natural swale and then a sharp drop-off, where it flowed through natural gullies to the river. Santich attempted to keep the use of the buried pipe to discharge wastewater and acidic stormwater hidden, including by covering the end of the pipe with dirt and brush and giving directions to employees not to tell anyone about it. Following Santich's directions, no one, including Santich, told even the company's environmental consultant about it.

Santich also took steps to facilitate the discharge of the wastewater and acidic stormwater to the river. For example, in about March 2021, Santich directed the excavation company that had installed the buried pipe to install an underground sump at the corner of the tank farm area that collected acidic stormwater that had flowed through the tank farm area and could pump it directly up the hill through the buried pipe. Similarly, in Fall 2022, Santich hired the same excavation company to clean out undergrowth from the manmade ditch at the top of the hill and line it with riprap to facilitate the flow of wastewater and acidic stormwater to the river. At some

points the riprap ditch is narrow and in other places it broadens to the width of the railroad bed, but it consistently directs the wastewater discharged from the pipe to the natural swale and drop-off that flowed through natural gullies to discharge into the Souhegan River. Similarly, the plumbing of the facility was modified to make it easier for wastewater to be pumped up the hill behind the facility.

Santich, directly instructed at least three employees and indirectly through other employees instructed at least one additional employee to send wastewater and acidic stormwater up the hill. In addition, at least one of Santich's employees directed junior employees to pump wastewater through one of the facility's food processing lines to a large outdoor storage tank. The wastewater was then pumped from the tank and up the hill. Former employees would also testify to their knowledge of the illegal discharges based on observations they made at the facility and conversations they had with employees who were directly involved in the discharges. The owner of the excavation company would testify to the work his company performed at the Old Dutch facility, always at Santich's direction, as would the worker who improved the drainage ditch and lay the riprap along the abandoned railroad bed.

In addition, in April and May 2023, problems at the facility resulted in the generation of high volumes of wastewater that exceeded the holding capacity of equipment being used by the facility for wastewater. In May, state inspectors from NH DES discovered wastewater from the facility with low pH and smelling of vinegar flowing from the manmade, riprap-lined ditch at the top of the hill on the Old Dutch property into the Souhegan River. Santich, who was present at the NH DES inspection, attempted to explain away the obvious wastewater discharges at the top of the hill with the false representation that it was only a failed attempt to plant mustard seed

there.

In August 2023, federal investigators executed a search warrant and discovered the buried pipe that discharged just over the top of the hill approximately 460 feet behind, and up a slope approximately 30 feet above, the facility. Investigators observed wastewater actively flowing from the pipe at the top of the hill at the time of the search. They sampled and tested the wastewater; it had an acidic pH of approximately 3.6. Because the pipe discharged just over the top of the hill, the wastewater did not flow downhill into the monitored Unnamed Brook. Instead, the investigators observed the wastewater discharge from the pipe into the riprap-lined drainage ditch that eventually discharged into the natural swale and into the Souhegan River. The manmade ditch also directed the wastewater to discharge into the Souhegan River to the northeast of the facility. This discharge point was downstream of, and not detectible by, the continuous environmental monitoring required by the EPA and State of New Hampshire.

4. <u>Penalties, Special Assessment and Restitution</u>.

The defendant understands that the penalties for the offense are:

A. A maximum prison term of 3 years (33 U.S.C. § 1319(c)(2));

B. A minimum fine of $5,000 and a maximum fine of the greater of $50,000 per day of violation or $250,000 or twice the gross gain derived from the offense or twice the gross loss resulting from the offense (33 U.S.C. § 1319(c)(2); 18 U.S.C. §3571(b)(3), (d));

C. A term of supervised release of not more than 1 year (18 U.S.C. §§ 3559, 3583). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release;

D. A mandatory special assessment of $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E. In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

F. The Court may also order forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a felony violation of the Clean Water Act (18 U.S.C. § 981(a)(1)(C)). Substitute assets are also subject to forfeiture.

To facilitate the payment and collection of any restitution or forfeiture that may be ordered, the defendant agrees that, upon request, he will provide the United States with a financial disclosure statement and supporting financial documentation.

5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B. Respond to questions from the Court;

C. Correct any inaccuracies in the pre-sentence report;

D. Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

(a) The United States will recommend that the defendant be sentenced within the applicable advisory sentencing guidelines range as determined by the Court. The defendant may argue for a sentence below the applicable advisory sentencing guidelines;

(b) U.S.S.G. § 2Q1.3(a) applies to this case. The parties agree that the base offense level is 6.

(c) U.S.S.G. § 2Q1.3(b)(1)(A), repetitive discharge of a pollutant into the environment, applies to this case. Either party may argue for a departure under U.S.S.G. § 2Q1.3 application note 4;

(d) U.S.S.G. § 2Q1.3(b)(4), discharge without a permit, applies to this case. Either party may argue for a departure under U.S.S.G. § 2Q1.3 application

note 7.

(e) U.S.S.G. § 3B1.1. aggravating role, applies to this case. The parties disagree on whether subsection § 3B1.1(a), (b) or (c) applies, and both parties may argue in support for one of the subsections.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the Court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant’s apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B. Challenges the United States' offer of proof at any time after the plea is entered;

C. Denies involvement in the offense;

D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E. Fails to give complete and accurate information about his financial status to the Probation Office;

F. Obstructs or attempts to obstruct justice, prior to sentencing;

G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H. Fails to appear in court as required;

I. After signing this Plea Agreement, engages in additional criminal conduct; or

J. Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing

for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8. Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B. To raise defenses, objections or requests that the Court can determine without a trial on the merits, including, without limitation, duplicity or multiplicity;

C. To be tried by a jury and, at that trial, to the assistance of counsel;

D. To confront and cross-examine witnesses;

E. Not to be compelled to provide testimony that may incriminate him; and

F. To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A. Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B. Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C. Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D. Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E. Is completely satisfied with the representation and advice received from his undersigned attorneys.

10. Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the United States Attorney's Office for the District of New Hampshire and the Environmental Crimes Section of the United States Department of Justice and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms, and may be barred from

entering into certain government contracts, including pursuant to 33 U.S.C. § 1368. The defendant understands that the United States reserves the right to notify any state or federal agency of the fact of this conviction, and this plea agreement does not provide any protection from collateral consequences to the defendant resulting from the fact of this guilty plea.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12. Forfeiture.

The defendant agrees to immediately and voluntarily forfeit to the United States his interest, if any, in any and all assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 as a result of his guilty plea.

The defendant also agrees to the entry of a joint and several criminal forfeiture money judgment, pursuant to Fed. R. Crim. P. 32.2(b)(1), against him and his codefendant OLD DUTCH MUSTARD CO., INC., d/b/a PILGRIM FOODS, INC. in the amount to be determined on or before the date of sentencing. The money judgment shall represent a fair estimate of the gross proceeds which the defendant obtained, directly or indirectly, as a result of the offenses to which he is pleading guilty, specifically the knowing discharge of a pollutant without a permit, in violation of 33 U.S.C. §§ 1311(a), 1319(c)(2)(A). If the proceeds derived by him from the offense, can no longer be located upon the exercise of due diligence by the United States, or are otherwise beyond the jurisdiction of this Court, pursuant to 18 U.S.C. § 982(b) and 21 U.S.C. § 853(p)(l)(A)-(E), the United States is entitled to forfeit substitute property in which the defendant has an interest up to the amount to be determined by the Court at the time of sentencing.

The defendant agrees to waive his right to have the Court separately determine the forfeiture of substitute property under 21 U.S.C. § 853(p)(2) and Fed. R. Crim. P. 32.2(e). The defendant further agrees to waive the procedures set forth in Fed. R. Crim. P. 32.2(e)(2), and to waive any defenses to forfeiture of the substitute asset. The defendant agrees to the entry of an order by this Court forfeiting said substitute property.

Any properties of the defendant forfeited as proceeds of the offense or as substitute assets shall be credited to the money judgment.

The defendant agrees and consents to the forfeiture of his interest in these assets pursuant to any criminal, civil and/or administrative forfeiture action brought to forfeit these assets.

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the

forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in any manner, including, without limitation, by direct appeal and/or habeas corpus, to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including but not limited to the following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed. R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3) failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument and announcement of the forfeiture at sentencing and incorporation of the forfeiture in the judgment. The defendant further acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

The defendant waives and releases any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not. The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

13. Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Information in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

14. Waivers.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review.

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2. The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts.

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government.

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

15. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorneys and until it is signed by the United States Attorney for the District of New Hampshire, Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515, or an Assistant United States Attorney, and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice, or a Trial Attorney for the Environmental Crimes Section.

17. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

Date: January 16, 2025

JOHN J. MCCORMACK
Attorney for the United States, Acting under
Authority Conferred by 28 U.S.C. § 515

By: [signature]
Matthew T. Hunter
Assistant United States Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
Matthew.Hunter@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources
Division

By: /s/Ronald A. Sarachan
Ronald A. Sarachan
Trial Attorney
Environmental Crimes Section
150 M Street N.E., Suite 4.108
Washington, D.C. 20002
Ronald.Sarachan@usdoj.gov

The defendant, Charles Santich, certifies that he has read this 21-page Plea Agreement and that he fully understands and accepts its terms.

Date: Jan 16,2025

Charles R. Santich
Charles Santich, Defendant

I have read and explained this 21-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: ____________________

____________________
S. Amy Spencer, Esquire

____________________
Mathew J. Todaro, Esquire
Outside Environmental Counsel

Attorneys for Charles Santich

void and no part of it may be enforced.

Date:____________________

JOHN J. MCCORMACK
Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515

By:________________________________
Matthew T. Hunter
Assistant United States Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
Matthew.Hunter@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

By:________________________________
Ronald A. Sarachan
Trial Attorney
Environmental Crimes Section
150 M Street N.E., Suite 4.108
Washington, D.C. 20002
Ronald.Sarachan@usdoj.gov

The defendant, Charles Santich, certifies that he has read this 21-page Plea Agreement and that he fully understands and accepts its terms.

Date: ____________________

______________________________
Charles Santich, Defendant

I have read and explained this 21-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 01/16/2025

______________________________
S. Amy Spencer, Esquire

______________________________
Mathew J. Todaro, Esquire
Outside Environmental Counsel

Attorneys for Charles Santich

void and no part of it may be enforced.

Date:____________________

JOHN J. MCCORMACK
Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515

By:______________________________
Matthew T. Hunter
Assistant United States Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
Matthew.Hunter@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

By:______________________________
Ronald A. Sarachan
Trial Attorney
Environmental Crimes Section
150 M Street N.E., Suite 4.108
Washington, D.C. 20002
Ronald.Sarachan@usdoj.gov

The defendant, Charles Santich, certifies that he has read this 21-page Plea Agreement and that he fully understands and accepts its terms.

Date: ____________________

______________________________
Charles Santich, Defendant

I have read and explained this 21-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: ____________________

______________________________
S. Amy Spencer, Esquire

______________________________
Mathew J. Todaro, Esquire
Outside Environmental Counsel

Attorneys for Charles Santich